(82 N. W. Rep. 746.)

---

AUGUST MAGNUSSON, *et al vs.* M. V. LINWELL, *et al.*

Opinion filed April 24, 1900.

**Specific Performance—Evidence.**

> This action was brought to compel specific performance of a contract to sell land, whereby defendants, upon certain conditions, agreed to sell to plaintiffs the land described in the complaint. Upon a trial anew in this court, and upon consideration of the evidence and facts in the record, it appears that long prior to the commencement of this action the plaintiffs had transferred, each acting separately and at different dates, all their right, title, and interest arising under the contract of purchase and sale to these defendants; that such transfers were made knowingly and willingly, without fraud, and upon adequate consideration. Accordingly, *held*, that the plaintiffs are without equity, and having no standing in court upon which a claim of specific performance can be predicated.

Appeal from District Court, Grand Forks County; *Fisk, J.*

Suit by August Magnusson and Sven Magnusson against M. V. Linwell and Charles Gustafson. Judgment for defendants, and plaintiffs appeal.

Affirmed.

*B. G. Skulason*, for appellants.

*H. N. Morphy* and *Bosard & Bosard*, for respondents.

WALLIN, J. This action is brought to obtain a specific performance of a written contract made between the parties to this action, dated October 28, 1892, whereby the defendants, in consideration of an agreed purchase price of $2,700, payable in five annual in-

stallments, drawing interest at 10 per cent., agreed to sell, and upon full payment to convey, to the plaintiffs, in *fee simple,* a certain quarter section of land described in the complaint. Plaintiffs allege that they have demanded a deed of the land, and that they "have fully and faithfully performed on their part all the conditions precedent imposed on them by the terms of the contract of sale," and further allege that, if the court shall find that they have not fully paid for the land, they are ready and willing to pay any balance which may be found unpaid. By their answer defendants admit that they entered into the contract as stated in the complaint, and admit that at divers times plaintiffs have paid upon the purchase price of the lands certain sums, amounting in the aggregate to $1,740.29, and allege that said payments have all been credited upon the installment notes given for said purchase price of the land, and defendants deny that said price has been paid in full, and allege that there is still $2,208.65 which has never been paid. Defendants further allege, in substance, that said plaintiff (Sven Magnusson) has no interest whatever in said land, or in the result of this action, for the reason that on or about the 8th day of February, 1895, he (the said Sven Magnusson) assigned and transferred to the plaintiff August Magnusson all his right, title, and interest in or to the land; and defendants further aver that the plaintiff August Magnusson has no interest whatever in the land in question, for the reason that the said August Magnusson, on the 23rd day of December, 1897, did, in consideration of the cancellation of an unpaid balance of $2,208.65 then due on the purchase price of said land, and for other valuable considerations, quitclaim all his interest under said contract, and in said land, to said defendants, and did then and there, and upon such consideration, release and cancel said contract, and released defendants from all liability arising from or on account of such contract. Defendants ask that said contract be adjudged canceled, and that the defendants be released and absolved from all liability under said contract, and for their costs and disbursements. The case was tried in the District Court without a jury, and a judgment was entered in favor of the defendants for all the relief asked for in their answer. Plaintiffs appeal from such judgment, and have demanded a trial anew in this court of the entire case.

It will be convenient, in disposing of the case in this court, to set out a portion of the findings made and filed by the trial court as a foundation for the judgment entered in that court: "(1) On the 28th day of October, 1892, and for some time prior thereto, the defendants, M. V. Linwell and Charles Gustafson, were seized and possessed of the land in suit. (2) On the 28th day of October, 1892, the defendants contracted to sell the said lands to the plaintiffs, which contract was evidenced by a written instrument, marked Exhibit 1, as follows: (Here the written contract is set out in the findings at length, but, as the substance of the contract has already been stated in general terms, we deem it unnecessary to

copy it in full for the purposes of this opinion. (3) Upon the execution and delivery of the said instrument, the plaintiffs entered into the actual possession of the lands in controversy. (4) On or about the 8th day of February, A. D. 1895, the plaintiff Sven Magnusson assigned and transferred all his interest in said contract (Exhibit 1) to August Magnusson by an instrument in writing (Exhibit 13), as follows: (Here follows Exhibit 13, but as the same is of considerable length, and, moreover, is quite inaccurate in its description of the contract of sale in question, we deem it unnecessary, under the circumstances of this case, to set it out at length. The instrument was, however, found by the trial court to have been executed, *i. e.* signed and sealed, by Sven Magnusson, the plaintiff, in the presence of two subscribing witnesses, on the 28th day of February, 1895; and, as has been seen, the trial court finds as a fact that Sven Magnusson intended, in executing this instrument, to transfer all of his interest under the sale contract in question to his brother, August Magnusson.) (5) On the 7th day of December, 1893, the plaintiffs paid to the defendants upon the said contract (Exhibit 1) the sum of $785. (6) The plaintiff August Magnusson paid on account of the said contract, on the 1st day of December, 1895, the sum of $495.39, and on the 4th day of December, 1896, the sum of $459.40. (7) On the 23d day of December, 1897, the plaintiff August Magnusson and the defendants had a complete settlement of the matters involved in the said contract (Exhibit 1), and the several payments thereon, and there was found to be due from the said plaintiff to the said defendants on the said date the sum of $2,208, balance of the purchase price of the said land. (8) On the 23d day of December, 1897, by an instrument in writing indorsed upon the duplicate of the contract (Exhibit 1), the plaintiff August Magnusson quitclaimed and surrendered the said land described in the said Exhibit 1 to the defendants herein, and the consideration for the said transfer was the said balance due to the defendants for the said land under and by virtue of the terms of the said contract (Exhibit 1). (9) That the defendants thereupon entered into the possession of the said land, and are still seized and possessed of the same." Upon said findings, the court found, in substance, as a legal conclusion, that the defendants were entitled to judgment as prayed for in their answer.

There are other allegations of fact in the complaint as to which considerable testimony was offered at the trial, and concerning which counsel have contended more or less in this court in their briefs and oral arguments, but we shall not have occasion to further allude to such other allegations and matters of fact in this opinion; for the reason that, in the view taken of the entire case by this court, as presented by the record, the facts found by the trial court, as above set out, are decisive of the result in this court, if such facts are supported by the evidence, and, in our judgment, the facts found below are supported by a decided preponderance of the evidence in this record.

The judgment, as entered, is based upon two controlling facts, viz: First, that the plaintiff Sven Magnusson, on February 28, 1895, transferred all of his interest in the sale contract and in the land in question to his co-tenant in the land, *i. e.* to August Magnusson; second, that more than two years subsequent to such transfer, and on December 23, 1897, said plaintiff August Magnusson, by an instrument in writing properly authenticated and indorsed upon the sale contract, transferred and quitclaimed all of his interest under the land contract, and the land described therein, to the defendants in this action.

It is needless to say that if these transfers were actually and voluntarily made by the plaintiffs, respectively, and were not made under a mistake of fact, and were not fraudulently obtained, the plaintiffs have no standing in court upon which they can ask for a decree of a court of equity for a specific performance of the contract in question. Even if the land had been fully paid for, the plaintiffs, after an assignment of all their interest to the defendants, would not be in a position to demand a deed of the land from the defendants, or to ask title at the hands of a court. We have carefully read and considered the evidence, and have weighed the arguments of counsel bearing upon the bona fides and legality of the two transfers, and we are convinced by such evidence that such transfers were intentionally made, and made with a deliberate purpose on plaintiffs' part of disposing of all their rights and interest derived through or under the contract in suit. It is unnecessary, in our judgment, to array all the evidence bearing upon this question. Without enumerating further details, the evidence shows to our satisfaction that no payments were made upon the purchase contract by either of the plaintiffs after the year 1896, and that on December 23d of the year 1897 there was a balance due on the contract of $2,208, which balance we are justified in saying, upon this record, has never been paid, in whole or in part. True, the plaintiffs' counsel contend that other moneys paid to liquidate other debts of the plaintiffs should be applied as payments upon the land contract, but it is our judgment that the evidence does not sustain this contention, but does sustain the finding of the trial court as to the amount still unpaid upon the purchase money.

August Magnusson admits that he signed the instrument of transfer, whereby he purported to quitclaim all of his interest under the land contract to these defendants on December 23, 1897. True, he claims that he did not understand the purport and effect of the instrument of transfer which he signed, but, in our opinion, this contention is overborne by the evidence of several witnesses who were present, and who testify that the quitclaim was signed deliverately by August after its nature and contents were clearly made known to him in his own language. Nor is the claim made that any special inducements were offered or any fraudulent representations made by the defendants to induce August Magnusson to quitclaim to the defendants. The contention seems to be that the quitclaim was signed, so to speak, automatically, and in blind obedi-

ence to the request or command of the defendants so to do. The clear weight of the evidence, however, bears out the defendant's version of the transaction, which is to the effect that the quitclaim was signed voluntarily upon the consideration, among other things, of a release and cancellation of the notes given for the purchase money, $2,208 of which, as we have seen, was then due. Plaintiffs' counsel contends that a special relation of trust and confidence resulted from the relation of the parties to the action, because the plaintiffs were not good business men, and could not read, write, or speak the English language, and because the defendants were business men of experience, and as such were in a position to exert a strong and controlling influence upon the minds of the plaintiffs, and that plaintiffs in fact trusted defendants implicitly in the details of all their business transactions with defendants. We are unable to see that this contention is substantiated by the record. There is no evidence that plaintiffs were men below the average in mental capacity, or that they did not depend upon their own judgment and views of business policy in their transactions with defendants. Nor are we able to see from the evidence that the defendants have violated any legal or moral obligations in their dealings with the plaintiffs. The plaintiffs, as well as the defendants, were in duty bound to protect their own interests, and we think, in dealing with the defendants, they were at arm's length, and, under the law, were bound to accept the consequence of their dealings with the defendants, despite the fact that the business venture involved in the purchase of the land on credit, and at a high rate of interest, turned out disastrously to them. We have considered carefully all the evidence in the record bearing upon the finding of the court below upon the matter of the alleged transfer made February 28, 1895, of all the interest in the land contract by Sven Magnusson to his brother August. We are of the opinion that the evidence fully sustains the finding that such transfer was made. At and prior to such transfer, Sven was dangerously ill, or considered so by his brother August, and under these circumstances August sought the defendants, and asked their advice as to the proper course to pursue with reference to Sven's property, which then included, besides the land in question, certain personal property owned jointly by the brothers, and situated upon the land. Their advice being asked in the premises, the defendants advised that Sven should transfer to August all of his property, and, at the request of August, the defendants drew two separate instruments of transfer,—one to transfer the goods and chattels, and one to transfer the interest of Sven in the land to August. The instrument relating to the land was, however, defectively framed, and was very inaccurate in the matter of a description of the contract in question. But this was the result of inadvertence, and not of design. The two instruments were taken away by August, and subsequently he returned them both to the defendants, and there-

after they were left in defendants' possession. When returned, both instruments appeared to have been executed by Sven. Subsequently, as appears by a preponderance of the evidence, Sven talked with the defendants concerning the matter of transferring his interests in his said property by the instruments in question to his brother, and expressed himself as fully satisfied with the transfer, saying, in substance, to defendants, that he was very glad and more than satisfied to be out of the deal, and much more of the same general purport. Nor did Sven at any time after February 28, 1895, and prior to December 23, 1897, the date of said transfer by August to the defendants, ever say or intimate to the defendants that he regretted the transfer to August; nor did he at any time prior to or at the time of the settlement between August and the defendants ever demand a return to him of any papers in the hands of the defendants, or in any manner, to defendants' knowledge, attempt to assert a right, as against his brother, to any of the property embraced in the instruments of transfer.

Counsel contend that the alleged transfers of property, real and personal, from Sven to August, never were made in law or in fact. They claim that the evidence shows that said instruments of transfer were never signed at all by Sven, and that both were in fact signed by August, and that August affixed the name of Sven Magnusson to the instruments at a time when Sven was in a state of semi-consciousness, and that, so far as Sven knew what was being done at the time, he supposed that his name was being signed to his last will and testament, and that all parties present, including August and the witnesses subscribing, were of that opinion also. There is much conflict in the testimony as to whether Sven did or did not knowingly sign the instruments of transfer, and whether, even if he did, he was conscious at the time; but we deem the matter to be unimportant, in view of the subsequent attitude which the evidence shows was assumed by Sven Magnusson, for a period of over two years, with reference to such alleged transfers. The evidence leaves no room for doubt that Sven well knew that the instruments of transfer had been made in his behalf, and delivered to the defendants, and that defendants were acting in good faith, upon the assumption that the instruments of transfer evidenced a bona fide transfer of the property by himself to August Magnusson. It is certain, too, that August, in December, 1897, by formal instruments of transfer, assigned what purported to be a transfer of all his property referred to. The evidence of such transfer is in writing, and there is no pretense that either the defendants or August Magnusson mentioned the name of Sven pending the negotiations for the transfer of the property to defendants, or that either side to the transaction ever suggested at that time that the assent or signature of Sven was necessary to transfer the property to the defendants. For the best of reasons, both parties to the transfer made in December, 1897, ignored the existence of Sven Magnusson. His own repeated assertions, independent of any other

written transfers very naturally led his brother and these defendants to believe that he had ceased to have any interest in, or title to, the land in question. Under such circumstances, Sven Magnusson has no standing in a court of equity to deny the bona fides of his transfer to his brother. Nor does it lie in his power to point out defects in the instrument of transfer. He well knew that defendants relied upon the validity of the instruments in their hands, and, by word of mouth, in effect acquiesced in their validity. He is therefore in no position to ask a court of equity to undo what he has deliberately done and long adhered to. Our conclusion is that neither of these plaintiffs is entitled in equity to a decree in his favor. The judgment of the court below must be affirmed, with costs of both courts. All the judges concurring.