(87 N. W. Rep. 991.)

---

GEORGE P. FLATH *vs.* J. P. CASSELMAN.

Opinion filed Oct. 19, 1901.

**Appeal—New Trial—Sufficiency of Evidence.**

In reviewing an order of a trial court overruling or granting a motion for a new trial, where the motion is based entirely upon the insufficiency of the evidence to sustain the verdict, this court will only inquire whether there is evidence of a substantial character supporting the verdict.

**Evidence Sustains Verdict.**

In this case it is *held* that there is substantial evidence to sustain the verdict, and that the trial judge did not abuse his discretion in overruling defendant's motion for a new trial.

Appeal from District Court, Grand Forks County; *Fisk,* J.

Action by George P. Flath against J. P. Casselman. Judgment for plaintiff. Defendant appeals. Affirmed.

*Bosard & Bosard,* for appellant.

*Tracy R. Bangs,* for respondent.

YOUNG, J. Action on two promissory notes executed and delivered by the defendant, Casselman, and one George Miller, as part payment for a Lambert gasoline threshing engine. Both notes are dated September 7, 1899. One is for $80, and is payable to the plaintiff. The other note is for $400, and is payable to the Lambert Gas & Gasoline Engine Company or order. The defense interposed is that the engine was sold under an express warranty; that there was a breach thereof, and rescission of the contract by the defendant. The trial was to a jury, and resulted in a verdict for plaintiff for the amount demanded in his complaint. A motion for a new trial was made by defendant. This was overruled, and judgment ordered and entered on the verdict for plaintiff. Defendant appeals from the judgment,

and specifies as error the order of the trial court overruling his motion for a new trial.

The sole ground of the motion for new trial is the alleged insufficiency of the evidence to justify the verdict. The warranty upon which defendant relies to defeat a recovery is contained in the following allegations of his answer: "The defendant alleges that the said plaintiff and one J. W. Lambert at the time of negotiating the sale of said engine to defendants made certain statements and representations, and guaranties in regard to said engine, as follows: That said engine would with one gallon of gasoline per horse power (that is, twelve gallons of gasoline per day), develop sufficient power to operate a certain separator which the plaintiff, who was the agent of the Peerless Threshing Machine Company, sold to the defendant at such time, and that, unless said engine would develop such sufficient power by consuming twelve gallons of gasoline per day, that the defendant could rescind said contract, and that said Lambert Gasoline Engine Company would return to him his notes." To sustain this defense, it was necessary for the defendant to establish (1) that there was an express warranty of the engine in the particulars alleged; (2) that the engine did not fulfill the requirements of such warranty; and (3) that the defendant notified the seller that the engine did not comply with the warranty. The position taken by the defendant in the trial court upon his motion for new trial was that all of the foregoing facts were established by uncontradicted evidence, and that is his contention on this appeal. If this contention is sustained, and the record discloses that the evidence is uncontradicted, as claimed, then it is patent that the order of the trial court refusing a new trial was erroneous. If, on the other hand, it shall appear that there is a substantial conflict in the evidence as to any facts material to the defense interposed, then the order overruling defendant's motion must be sustained; for the rule is well settled that this court will not weigh conflicting evidence, and that it will not disturb the order of a trial court granting or denying a new trial where there is a substantial conflict in the evidence. This is a rule of appellate tribunals generally. *Magnusson* v. *Linwell,* 9 N. D. 157, 82 N. W. Rep. 743; *Howland* v. *Ink,* 8 N. D. 63, 76 N. W. Rep. 992; *Muri* v. *White,* 8 N. D. 58, 76 N. W. Rep. 503; *Bishop* v. *Railroad Co.,* 4 N. D. 536, 62 N. W. Rep. 605; *Taylor* v. *Jones,* 3 N. D. 235, 55 N. W. Rep. 593; *Dickey* v. *Davis,* 39 Cal. 569; *Bank* v. *Wood,* 124 Mo. 72, 27 S. W. Rep. 554; Hayne New Trial & App. § 288. See, also, 2 Enc. Pl. & Prac. 391, and cases cited. And it is not absolutely necessary to create a conflict in the testimony that the witnesses shall explicitly contradict one another. A conflict may be created by evidence tending to establish other facts which are inconsistent with the existence of the facts relied upon. *Black* v. *Walker,* 7 N. D. 414, 75 N. W. Rep. 787.

We will now turn to a consideration of the evidence, and in doing so we find it unnecessary to go beyond that relating to the alleged warranty of the engine. At the date of the transaction in question

the plaintiff was the resident agent for the sale of Lambert gasoline engines, and had his office with J. E. Cooley and John Cooley, in the city of Grand Forks. The Cooleys were agents for the separator which was purchased by the defendant with the engine in question. The plaintiff fixed a price on the engine at which the agents for the separator were authorized to sell the same, and all preliminary negotiations for the sale to defendant were conducted by said agents. Neither the plaintiff, nor J. W. Lambert, by whom the alleged warranty is claimed to have been made, were personally connected with the sale prior to the day upon which the notes in suit were executed. The witnesses agree that the defendant did not purchase or agree to purchase the engine and separator until the notes were given; also that he took the same from the railroad station on September 1st to his farm for the purpose of trying the same pursuant to authority received from Ed. Cooley. On this defendant, Casselman, testifies as follows: "Mr. Ed. Cooley stated to us that we could take that machine and run it for ten days if we wanted to. * * * When I took the engine from Northwood to the farm, I didn't say anything about buying. I took it there on trial. * * * There was no contract made with John Cooley or Ed. Cooley on that day. They told me to go out and take the machine and try it. After I hauled the machine to my farm, I had it in my possession merely for the purpose of trying it." Ed. Cooley testifies: "I told him he could go and take the machine and try it, and if it was satisfactory he could settle for it; he could have a trial of the machinery first. * * * He said he wouldn't give any order for the machine; that he would take the machine and try it, and if it was all right he would settle for it with his notes. * * * I never told him he could take the machine, and try it for ten days. I just gave him the figures. I wrote them down, and told him to go and take the machine and try it, and if it was satisfactory he could settle for it." There is no evidence in the record tending to contradict the facts testified to above. It is therefore uncontradicted that the engine was delivered into defendant's possession for the purpose of trial on September 1st, and that such was his relation to it up to the day the notes were executed, at which time the sale was consummated, and the warranty was made by plaintiff and Lambert, if at all. Five persons were present at the settlement, and their testimony is before us.

We will now consider the evidence relative to the warranty alleged to have been made at this settlement. On the part of the defense the defendant, George Miller, and Harry Miller all testify positively that both Flath and Lambert, at the time the notes were executed, made the representations and guaranty substantially as alleged in the answer and heretofore quoted. The defendant gives his version of the circumstances under which the notes were given in the following language: "When Mr. Flath and Mr. Lambert were there, we signed the notes. * * * At that time, when we went into the house, and he figured up and said he wanted to take notes for the separator and engine. I objected

and said we had not given it sufficient trial; that we had to have a good thorough trial before we gave the notes. Then he said it did not make any difference; if the machine did not work just as they said it would, that we did not have to keep it. Both Mr. Flath and Mr. Lambert told me if the engine did not work I could return it. That statement was made by both of them at the table in the house when we went in to determine on what we would do. They made the remark numerous times while we were there that, 'if our machines don't work just as we say they do, people do not have to keep them.' They made general remarks of that kind. * * * After we had tried that machine for one hour, we settled with Mr. Flath and Mr. Lambert, and gave the notes conditionally." The testimony of George Miller and Harry Miller is, in substance, the same as that just quoted.

We now turn to the testimony of Flath and Lambert, so far as it relates to the settlement. Flath's version of the transaction is as follows: "I have heard Mr. Casselman's testimony. I was in Nelson county in September, and made a settlement with him for a certain Lambert gasoline engine, and a separator that went with it. After testing this separator and engine after we got there, giving it all the test that Mr. Casselman required, I said to him and Mr. Miller, 'Do you gentlemen want to call this outfit yours?' They said they did. 'Well,' I said, 'let us go up to the house and settle for it,' when we proceeded up to the house and made settlement for the engine and for the separator and for freight, according to the agreement with Ed. Cooley. The machine had been running before I had this talk with Casselman and Miller. It had threshed all they required to thresh that day. 'Neither Mr. Lambert nor myself said anything of the character that, if the machine did not run, they need not keep it. I told them they would probably have some trouble with the engine and in case they did, they were at liberty to call upon me at Grand Forks, and I would come out and help them out of their difficulty. I said there would certainly be some slight thing that they didn't just understand; * * * I did not hear Mr. Lambert make any statement out there that this machine would develop twelve horse power on twelve gallons of gasoline per day. I do not remember that either of us said anything to Casselman as to the amont of gasoline this engine would consume. Neither before nor after signing the notes was there any agreement between Casselman and Miller and ourselves in my presence that it was agreed that, if the machine did not operate as it had been stated, that they need not keep it." J. W. Lambert says: "I never met any of these people until after the engine had been delivered into their possession. On September 7th I went with Flath to Casselman's farm to start the engine; gave Casselman and Miller instructions how to operate and handle the engine in question. At the same time we threshed, possibly, three or four loads of barley. After this was through, Mr. Casselman came and told me to stop the engine; he said that the outfit was satisfactory to him. We went up to the house, and

Casselman and Miller made out the notes to Flath for the full settlement. I told Casselman the engine would not use less than a gallon of gasoline per indicated horse power for each ten hours' run. I told him it was a twelve horse power engine, while it would develop over twelve horse actual power. The indicated horse power is greater than the actual horse power. The engine in question produced between fourteen and fifteen actual horse power, and indicated twenty-two horse power. I told them it would take one gallon of gasoline for each indicated horse power; that is, not less than twenty-two gallons to run that engine in its full capacity for the period of ten hours. I made no other statement, guaranty, warranty, or representation whatsoever. * * * I never made any statement to the defendants that they could rescind the contract if the engine did not develop sufficient power by consuming twelve gallons of gasoline per day. I never made any representations to the defendants as to what the engine would do.'

There is other evidence in the record which might have some weight in determining the truth as to what was done at the settlement. But, as has already been stated, our duty in reviewing the order of the trial court overruling the defendant's motion for a new trial does not go to the extent of authorizing us to assume the functions of the jury and weigh conflicting evidence, or even to assume the discretion the trial court had in ruling on the motion. We are limited to the single inquiry as to whether there is a substantial conflict in the evidence as to the material facts which are necessary to establish the defense pleaded; and in pursuing this inquiry we have reached the conclusion that there is a direct conflict on a vital fact, namely, as to the making of the warranty upon which defendant relies. This conflict is sufficiently shown by the evidence heretofore quoted. If, on the one hand, the jury would give full credit to the testimony of the defendant and the witnesses George and Harry Miller, they would necessarily find that the warranty had been made by Flath and Lambert as alleged in the answer. But, on the other hand, if they believed the testimony of Flath and Lambert, they could properly conclude therefrom that no warranty was made, and that the engine was purchased after a test made to determine whether it was satisfactory, and that the notes were given as an unconditional settlement. Briefly stated, the defendant's evidence tends to establish a warranty, while the testimony of the plaintiff tends to establish an unconditional settlement after a test and without a warranty. The facts are inconsistent, and the evidence tending to sustain the same is of a substantial nature.

We cannot say on this state of the evidence that the trial judge abused his discretion in denying the motion for new trial. It follows, therefore, that the judgment must be affirmed, and it is so ordered. All concur.