(88 N. W. Rep. 721.)

---

## JOHN DRINKALL vs. MOVIUS STATE BANK.

**Cashier's Check Not Open to Countermand.**

A cashier's check, being merely a bill of exchange drawn by a
bank upon itself, and accepted in advance by the act of its issuance,
is not subject to countermand, like an ordinary check, and the rela-
tions of the parties to such an instrument are analogous to those
of the parties to a negotiable promissory note payable on demand.

**Indorsement—Illegal Consideration.**

Both under elementary principles of the law of contracts and by
the provisions of § 59 of chapter 100 of the Civil Code (Rev. Codes
1899), the title of an endorser of a negotiable note is defective when
the consideration for the indorsement is unlawful, or where the in-
dorsement is procured by unlawful means.

**Payment in Good Faith a Discharge.**

Payment of a negotiable instrument, to effect a discharge, must
be made to the rightful holder or his authorized agent; but the
mere possession of such an instrument indorsed by the payee in
blank is prima facie evidence of the holder's right to demand and
receive payment, and payment to such holder will discharge the
instrument, when made in good faith, and in ignorance of facts which
impair the holder's title.

**Gambling—Illegal Consideration.**

Under the statutes of this state gambling is expressly prohibited.
It is accordingly *held,* that the indorsement and delivery of a cashier's
check by the payee to a gambler in payment for chips to be used
in a gambling game does not make such gambler a holder in due
course, and his title so acquired is defective.

**Recovery by Indorsee.**

The rule that courts of law and equity will leave the parties to
prohibited transactions where their unlawful acts have placed them,
so far as the same are executed, does not authorize an indorsee, who
has procured the indorsement of a negotiable instrument in a
gambling transaction, to rely upon the indorsement so procured,
either against the indorser or the maker of the instrument. Neither
will prevent the payee of the instrument which has been so indorsed
from enforcing payment against the maker, for the obvious reason
that the contract which the latter enforces is not tainted with the
unlawful transaction.

**Verdict Sustained by the Evidence.**

The plaintiff in this action seeks to recover on a cashier's check
issued to him by the defendant, which check he indorsed and deliv-
ered to a gambler in payment for chips to be used in playing a rou-
lette wheel. The check was thereafter paid to the gambler by the

defendant. We find there is substantial evidence in the record to sustain the finding of the jury that the defendant had notice of the defect in the gambler's title prior to making such payment, and therefore hold that it was not error for the trial court to overrule defendant's motion for a new trial, based upon the insufficiency of the evidence as to notice. Wallin, C. J., concurring.

Appeal from District Court, Richland County; *Lauder,* J.

Action by John Drinkall against the Movious State Bank. Judgment for plaintiff, and defendant appeals. Affirmed.

*Purcell & Bradley,* for appellant.

Appellant indorsed his cashier's check and delivered it in return for poker chips used in a gambling game and when he was intoxicated. He was at the bank when it was presented for payment and advised the cashier not to pay the same. He did not deny his indorsement and gave no reason to the cashier why it should not be paid. There is nothing to indicate that the bank or its officers tried to avoid notice or prevented the plaintiff from making a full disclosure of his reasons for not wanting the check paid. *Watson* v. *Walker,* 23 N. H. 471; *Hatch* v. *White,* 22 Pick. 518; *Lamphere* v. *Cowan,* 42 Vt. 175. The burden was on appellant to show that Maxwell, the indorsee, was not a bona fide holder. *Pennsylvania Bank* v. *Frankish,* 91 Pa. St. 339. The cashier's check in controversy is a bill of exchange drawn by the drawer upon itself and is equivalent to an acceptance. Ch. 100, Civ. Code 1899, § 185; 1 Daniel's Neg. Inst. 444; 1 Parson's N. & B. 288; 2 Randolph's Com. Pr. 588; *Hasey* v. *Beet Sugar Co.,* 1 Douglas, 193; *Cunningham* v. *Wardwell,* 12 Me. 466. A bank issuing a cashier's check has accepted it in advance and is liable to pay it to the payee or to any person to whom the payee has transferred it by indorsement. An acceptance, when once complete, is irrevocable. Byles on Bills, 198; Chitty on Bills, 347; 1 Daniel's Neg. Inst. 452; *Anderson* v. *Bank,* 1 McCreary, 352. This check stood on the same basis as a certified check. Morse on Banking, § 399. Appellant, as the loser in a gambling transaction, when he indorsed the check to the winner in payment of his gambling debt, fully executed the gambling contract. The bank had no concern with appellant's remedy against the gambler. As between themselves the law left the parties to the gambling transaction where it found them, and respondent cannot be injured in consequence of the transfer of the check upon the illegal consideration. *Reed* v. *Bond,* 55 N. W. Rep. 619; *Kerr* v. *Birnie,* 25 Ark. 225; *Ager* v. *Duncan,* 50 Cal. 325; *Howell* v. *Fountain,* 46 Am. Dec. 415; *Morris* v. *Philpot,* 11 Ind. 447; *Nudd* v. *Burnett,* 14 Ind. 25; *Dumont* v. *Durfec,* 27 Ind. 283; *Clark* v. *Ry. Co.,* 5 Neb. 314; *Hill* v. *Freeman,* 49 Am. Rep. 48; *Leveroos* v. *Reis,* 52 Minn. 259, 53 N. W. Rep. 1155. The object of the rule as to executed contracts is stated in *Morris* v. *Heinrath* 101 Mass. 366, to be that either party to an illegal contract, where they are in pari delicto and the contract is executed, is not to give validity to the transaction, but to deprive

the parties of the right to enforce the same or of relief therefrom. *Kahn* v. *Walton,* 20 N. E. Rep. 203; *Cowells* v. *Raguet,* 14 Ohio, 38; *Thorne* v. *Cronize,* 16 Ohio 54. There is no evidence that plaintiff's intoxication deprived him of the use of his reason, or that the indorsement was made through fraud, procurement, or undue advantage by the other party. Pom. Eq. Jur. 949.

*Freerks & Freerks,* for respondents.

The bare indorsement of the cashier's check did not operate as an assignment of the funds against which it was drawn, 2 Daniel's Neg. Inst. 1623; § 189 Rev. Codes, 1899. The consideration of a contract must be lawful. § 3873, Rev. Codes. When the contract has but a single object, and that unlawful, it is void. § 3869, Rev Codes. The contract under which this check was indorsed to plaintiff was in violation of express law. § 3920, Rev. Codes; *Dows* v. *Glaspel,* 4 N. D. 251. Courts will not render their aid to parties conspiring to impede the law, therefore an illegal consideration will not support a contract. *Congress, etc., Co.* v. *Knowlton,* 103 U. S. 350; *Widoe* v. *Webb,* 20 Oh. St. 431; *Sternberg* v. *Bowman,* 103 Mass. 325; *Tucker* v. *West,* 29 Ark. 386; *Bailey* v. *Bushing,* 28 Conn. 455; *Harwood* v. *Knapper,* 50 Mo. 456; *Porter* v. *Jones,* 52 Mo. 399. The illegal contract of wager being a nullity, the money paid thereon could be recovered before it had actually been paid into the hands of the winning party. After it had been paid over, the parties being equally in fault, the law would assist neither. *Jennings* v. *Reynolds,* 4 Kan. 110; *Reynolds* v. *McKinney,* 4 Kan. 94. The contract between the parties to the wager being void, the stakeholder became the agent or bailee of the depositor and held the money subject to his order. The authority of the bank to pay the check in this instance was revoked before payment and its right to pay the same to the indorsee, a party to the gambling transaction, was thereby terminated. *Cleveland* v. *Wolfe,* 7 Kan. 185; 2 Parsons on Contracts, 139; *Tarleton* v. *Baker,* 18 Vt. 9; *Wheeler* v. *Spencer,* 15 Conn. 28; *McAllister* v. *Hoffman,* 16 Serg. & R. 141; *Morgan* v. *Groff,* 4 Barb. 527. The verdict of the jury will not be disturbed. All doubts are to be resolved in its favor, and there is substantial evidence to sustain the verdict. *Halley* v. *Folsom,* 1 N. D. 325; *McRea* v. *Bank,* 6 N. D. 353; *Rosenbaum* v. *Hayes,* 8 N. D. 461; *Becker* v. *Duncan,* 8 N. D. 600; *Heyrock* v. *McKenzie,* 8 N. D. 601; *Taylor* v. *Jones,* 3 N. D. 235; *Clark* v. *Walker,* 7 N. D. 414.

YOUNG, J. The plaintiff in the action, John Drinkall, seeks to recover from the defendant, the Movius State Bank, a state banking corporation organized under the banking laws of this state, and doing business in the village of Lidgerwood, the sum of $200 and interest, as due and unpaid, on a certain cashier's check or certificate of deposit issued by the defendant to the plaintiff on the 18th day of December, 1899. The defense interposed is payment to the holder and owner thereof in due course of business. The case was

tried to a jury, and a verdict returned for plaintiff for the full amount claimed. Defendant moved for a new trial. This was. denied, and judgment was entered on the verdict. The defendant appealed from the judgment, and assigns for review in this court the same errors which were relied upon in the trial court in its. motion for a new trial.

The complaint, in substance, alleges that on the 18th day of December, 1899, the plaintiff deposited with the defendant bank in Lidgerwood the sum of $200; that the defendant issued therefor and delivered to plaintiff its certificate of deposit or cashier's check, dated on that day, and payable to plaintiff on demand; that on the 30th day of December thereafter he duly demanded of defendant the payment of the sum of $200 represented by said certificate of deposit or cashier's check; that defendant refused, and still refuses, to pay the same, and has not paid the same, or any part thereof. The complaint further alleges that after receiving said check, and on the same day he went to the place of business of Ralph Maxwell and William Van Dorn, in Lidgerwood, where he became intoxicated,. and while so intoxicated he was induced by said Maxwell and Van Dorn to gamble and take part in a game of chance played by means of an instrument known as a "roulette wheel"; that he played at said game of chance and wagered large sums of money thereon; that for the purpose of playing the same was induced to indorse and did indorse the check in question, and delivered the same to the said Maxwell for the purpose of paying money lost by plaintiff, and claimed to have been won by said Maxwell and Van Dorn, in said gambling transaction; that on the following day, to-wit, December 19, 1899, and prior to the presentation of said check to defendant for payment, the plaintiff notified the defendant of the facts in reference to the loss of said check and of the possession thereof by Maxwell and Van Dorn, and instructed said defendant not to pay the same when presented. The answer admits the deposit of money by plaintiff, and the issuance of the cashier's check as alleged in the complaint, but by a denial places in issue the facts as to the loss and notice of loss of the check alleged in the complaint and alleges that "said cashier's check was, on or about the 19th day of December, 1899, presented to the defendant in the usual course of business for payment, by the. then holder and owner of said check, properly indorsed by the signature of the plaintiff upon the back of said check, and was, by said defendant, in the usual course of business, paid to the holder of said check." This appeal presents for review the order overruling defendant's motion for a new trial, which involves a consideration of the grounds upon which the motion was based. The errors specified in the statement of case on which the motion was made are 18 in number. They need not be discussed separately. So far as they are important to a review of the order denying the motion for a new trial they are disposed of by our conclusion on the questions which we shall hereafter discuss.

Before taking up the consideration of the questions presented by

the assignments of error, a brief statement of facts is necessary. It is established by undisputed evidence that on the 18th day of December, 1899, the plaintiff, Drinkall, deposited in the defendant bank in Lidgerwood the sum of $200, and received therefor the the cashier's check in suit, which check was signed by the assistant cashier of the bank, drawn on said bank, and made payable in terms to the plaintiff. Thereafter, in the evening of the same day, Drinkall went into a gambling house in Lidgerwood, which was operated by Ralph Maxwell and William Van Dorn, which is known in the record as "Maxwell's Blind Pig," where he drank sufficient liquor to render him intoxicated, and while so intoxicated he was invited into a rear room in the building by Van Dorn, and there engaged in the gambling game operated by the gambling device known as a "roulette wheel." When he entered their place of business, he had in his possession $28 in money and the cashier's check in question. During the progress of the game he exchanged his ready cash for chips and when they were exhausted, which was at about 11 o'clock p. m., at the request of Van Dorn, he signed his name upon the back of the check in question, and delivered the same to Maxwell in exchange for more chips and some money to be used in playing said game. At 2 o'clock in the morning Drinkall was without money, check or chips. The wheel was stopped, and Drinkall, whose condition was unsteady from frequent libations during the progress of the game, was, at Maxwell's request, given another drink, and led upstairs, and put to bed. Before doing this, Maxwell had him again write his name on the check, his former signature not being satisfactory. On the morning of the 19th, Maxwell presented the check at the bank's office, duly indorsed by himself, and the same was paid in full by the defendant. As to the foregoing facts there is no controversy. They establish the deposit by plaintiff, the issuance to him of the check in question, the transfer of the check by indorsement to Maxwell and Van Dorn in a gambling transaction, and the payment of the same to said Maxwell by the defendant.

One of appellant's contentions is that "the evidence is insufficient to show that the bank had knowledge or notice of sufficient facts to put it on inquiry as to the invalidity of plaintiff's indorsement of the cashier's check or of the illegality or insufficiency of the consideration upon which such indorsement was made," and that, therefore, it was error to deny the motion for a new trial on this ground alone. Before referring to the evidence as to notice to the defendant, it is important to determine the legal rights and obligations of the parties to the instrument, and with that end in view we will consider in order (1) the character of the cashier's check upon which the plaintiff bases his cause of action; (2) the legal effect of the indorsement made in the gambling transaction, and (3) the duty of the defendant as to payment of the cashier's check.

A cashier's check, so-called, differs radically from an ordinary check. The latter is merely a bill of exchange drawn by an indi-

vidual on a bank, payable on demand; or, in other words, it is an order upon a bank purporting to be drawn upon a deposit of funds, for the payment of a certain sum of money to a person named, or to order or bearer, on demand. As between himself and the bank, the drawer of the check has the power of countermanding his order of payment at any time before the bank has paid it, or committed itself to pay it. 5 Am. & Eng. Enc. Law (2d Ed.) 1079, and cases cited. When the check, however, is certified by the bank, the power of revocation by the drawer ceases, and the bank becomes the debtor. 1 Morse, Banks, § § 398, 399. A cashier's check is of an entirely different nature. It is a bill of exchange, drawn by the bank upon itself, and is accepted by the act of issuance; and, of course, the right of countermand, as applied to ordinary checks, does not exist as to it. 2 Rand. Com. Paper, § 588; 1 Daniel, Neg. Inst. 444; 1 Pars. Notes & B. 288. The bank, in such case, is the debtor, and its obligation to pay the cashier's check is like that of the maker of any other negotiable instrument payable on demand. As applied to the case under consideration, the rights and obligations of the plaintiff and defendant as to the cashier's check in question were those of a payee and maker of a negotiable promissory note payable on demand.

What was the legal effect of plaintiff's indorsement, being based upon a gambling transaction? The solution of this question, under the authorities, is difficult, by reason of the difference in statutes on the subject, and also because of the conflict in the common law, both in England and in the United States. At early common law in England, gambling contracts, when fair and free from cheating, were assumed by the courts, without discussion, to be valid. Later the courts were disinclined to entertain actions based on gambling contracts; but still later they returned to the original rule that such contracts were valid and actionable, excepting therefrom, however, certain classes of wagering contracts. In the United States, in a number of the states it is held that the common law of England upon gambling contracts is unsuited to the conditions and institutions, and that all gambling contracts are void by their common law. In others it is held that the English statutes against gambling passed prior to the American revolution are in force in their jurisdiction as common law, or as adopted by statute in general terms. Still another class of states hold that the common law of England on the subject of gambling contracts is in force, and that gambling contracts not of the forbidden classes are valid, and enforceable by their common law. See cases cited in 14 Am. & Eng. Enc. Law (2d Ed.) 586, 590. In Illinois, under the peculiar statute of that state, it has been held that an indorsement of commercial paper on a gambling consideration is void, and, although in the hands of an innocent holder for value, the legal consequence of such an indorsement is of no more effect than a forged indorsement (*Chapin* v. *Dake*, 57 Ill. 295, 11 Am. Rep. 15; and the property in the instrument remains in the payee unaf-

fected by such indorsement (*Bank* v. *Spaids,* 8 Ill. App. 493). So, also, under the statutes of Mississippi declaring all gambling contracts utterly void, the maker of a note payable to an individual named or bearer, when sued by another than the party named as payee, may successfully defend by showing that the plaintiff won the note on a wager. *Holman* v. *Ringo,* 36 Miss. 690; *McAuley's Adm'r* v. *Mardis,* Walk. 307; *Adams* v. *Rowan,* 8 Smedes & M. 624 *Lucas* v. *Ward,* 12 Smedes & M. 157; *Martin* v. *Terrell,* Id. 571; *Smither* v. *Keys,* 30 Miss. 179. The same is true under the Iowa statute, and a promissory note so given is void even in the hands of an innocent holder for value. *Bank* v. *Alsop,* 64 Iowa, 97, 19 N. W. Rep. 863. See, also, *Conklin* v. *Robets,* 36 Conn. 461; *Swinney* v. *Edwards,* (Wyo.) 55 Pac. Rep. 306, 80 Am. St. Rep. 916. In this state there is no statute declaring in express terms that all contracts in furtherance of gambling are void, as in the above states. But gaming itself is made unlawful by chapter 37 of the Penal Code (Revised Codes 1899), which chapter, in its prohibitions, extends to the game at which the plaintiff herein lost the check in suit. It is entirely clear, and, indeed, it is not controverted, that the transaction in which the indorsement of the note by plaintiff to Maxwell was made was one prohibited by express law, and that the consideration for such indorsement was illegal. Of what legal effect, then, we may ask, was the indorsement? Did it have the effect of transferring the check to Maxwell as an innocent purchaser, and enable him to legally enforce payment from defendant, notwithstanding the unlawful means by which the possession and indorsement were obtained? Defendant's counsel contend that it did have such effect, and that, had the defendant refused to pay him, it could, under the law, have been compelled to do so, even though it had notice of the entire gambling transaction. This contention we cannot sustain. It is not, however, without specious reason and respectable authority to support it. The well-settled rule of law and equity is invoked by the defendant, "In pari delicto potior est conditio possidentis," under which neither party to an illegal contract may be aided by the courts, either to set it aside or enforce it; or, as was said in *Roll* v. *Raguet,* 4 Ohio, 400, 22 Am. Dec. 759: "Whenever the agreement is immoral, or against public policy, a court of justice leaves the parties as it finds them. If the agreement be executed, the court will not rescind it; if executory, the court will not aid in its execution." And in *Atwood* v. *Fisk,* 101 Mass. 363, 100 Am. Dec. 124: "It will not recognize a right of action founded on the illegal contract in favor of either party against the other." This court had occasion to apply the rule to a Sunday transaction, which was alleged to have been illegal, in *Rosenbaum* v. *Hayes,* 10 N. D. 311, 86 N. W. Rep. 973, and we there held that, so far as the transaction was executed the law leaves the parties where their unlawful acts have placed them. In addition to the cases cited in the opinion in that case, see also, *Kahn* v. *Walton,* 46 Ohio

St. 195, 20 N. E. Rep. 203; *Spring Co.* v. *Knowlton,* 103 U. S. 49, 26 L. Ed. 347; *St. Louis, V. & T. H. R. Co.* v. *Terre Haute & I. R. Co.,* 145 U. S. 393, 12 Sup. Ct. 593, 36 L. Ed. 748, 15 Am. & Eng. Ec. Law (2d Ed.) 999. Under the same authorities, and for the same reasons, so far as it is executory, the contract is not enforceable. 2 Pom. Eq. Jur. § 939. It is contended that the indorsement and delivery of the check in this case was an executed transaction, and that, accordingly, under the foregoing rule, the plaintiff lost all of his rights in the check, and that Maxwell acquired the same. In support of this position counsel for appellant cite *Reed* v. *Bond,* (Mich) 55 N. W. Rep. 619, and *Kahn* v. *Walton,* (Ohio) 20 N. E. Rep. 203. *Reed* v. *Bond* is similar to the case at bar, and is squarely in point and upholds counsel's view. It rests, however, upon the declaration that the gaming contract was fully executed. The unsoundness of this contention lies in the assumption that the contract of indorsement was valid and complete. "An indorsement is a written contract, the terms of which, though usually omitted for the convenience of commerce, are certain, fixed, and definite, and not the less perfectly understood because not expressed in words." It, "like any other written promise or agreement, requires two things besides the mere writing to constitute a contract, viz., a delivery and a consideration," and "the delivery and consideration are always open to impeachment." (4 Am. & Eng. Enc. Law [2d Ed.] 485, 487, and cases cited) ; and the general rule that parol evidence is inadmissible to contradict, vary, or add to a written contract does not preclude the admissibility of such evidence to show the illegality of a contract. In such case the evidence is not admitted to vary or control the contract, but to show that in contemplation of law, in consequence of the proven illegality, no contract at all ever had any existence; that it was void ab initio." And it is further held that "when the defendant does not set up the defense of illegality, but such illegality appears from the case as made by either the plaintiff or defendant, it becomes the duty of the court sua sponte to refuse to entertain the action." 15 Am. & Eng. Enc. Law, 1015, and notes; *Johnson* v. *Willard,* 83 Wis. 420, 53 N. W. Rep. 776. It is clearly the plain policy of the law not to extend aid to either party to an unlawful transaction, and to refuse to recognize rights or entertain actions which arise from acts which are under its condemnation.

Does the application of these principles to the facts of this case make Maxwell an indorsee in due course, and clothe him with all of the rights of a good-faith purchaser for value? A negative answer to this question must be given. In the first place, the contract of indorsement was defective, and subject to impeachment, by reason of the admitted illegality of the consideration,—this upon elementary principles of the law of contracts. The defective indorsement did not, in our opinion, constitute a contract to which the principle invoked could apply. It is clear that Maxwell could not suc-

N. D. R.—2

cessfully maintain an action against the plaintiff upon the indorsement; and it would seem that the courts would not aid him to enforce payment from defendant for the sufficient reason that his right of action would arise out of the indorsement made in the unlawful gambling transaction. On the other hand, plaintiff is not seeking the aid of the court in this action to enforce a gambling contract, or of any right growing out of the indorsement, but is merely attempting to enforce the defendant's promise to him contained in the cashier's check, which is not tainted by any illegality whatever. His cause of action does not arise in the gambling transsaction; whereas the defense of payment, which is relied upon to defeat a recovery by plaintiff, rests entirely upon an affirmance of the transfer of the check in the gambling transaction, for on no other ground could Maxwell, after notice, have the right to receive or enforce payment. As has been already stated, the courts will not recognize and enforce rights arising on illgotten title. *Kirkpatrick* v. *Clark,* 132 Ill. 342, 24 N. E. Rep. 71, 8 L. R. A. 511, 22 Am. St. Rep. 531; *Miller* v. *Marckle,* 21 Ill. 152; *Riedle* v. *Mulhausen,* 20 Ill. App. 68; *Cochran* v. *Strong,* 44 Ga. 636; *Express Co.* v. *Duffey,* 48 Ga. 358. On principle therefore, we have reached the conclusion that the title, rights, and possession of the check by Maxwell, under the facts as they appear, are directly analogous to those of the finder of a lost note which has been indorsed by the payee, or of such an instrument in the hands of one who has stolen it. Prima facie, every holder of a negotiable instrument is deemed a holder in due course, both under the law merchant and under the statute of this state. See § 59 of chapter 100 of the Civil Code (Rev. Codes 1899), which is the chapter governing negotiable instruments executed after July 1, 1899; 2 Rand. Comm. Paper, § 730; *Million* v. *Ohnsorg,* 10 Mo. App. 432. And "the mere possession of a negotiable instrument which is payable to the order of the payee, and is indorsed by him in blank, or of a negotiable instrument payable to bearer, is in itself sufficient evidence of his right to present it, and to demand payment thereof. And payment to such person will be valid, unless he is known to the payor to have acquired possession wrongfully." 1 Daniel, Neg. Inst. § 573, and cases cited in notes. If any doubt could exist as to the correctness of our conclusion that Maxwell's title to the check was imperfect, and the contract of indorsement legally unenforceable either against the indorser or the payor, it is set at rest by section 55 of the act above referred to, which reads as follows: "The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear or unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." The above statute was in force when the transaction in question took place, and is controlling. Under said section Maxwell's title was defective for two reasons: First, he procured the sig-

nature of plaintiff by unlawful means; and, second, he obtained
the check for an illegal consideration. Further, the fact is estab-
lished that he was not a holder in due course, and had not the rights
of such a holder, for the reason that he did not take the instrument
in good faith and for value, which is one of the requirements to render
a holder a holder in due course under section 52 of the chapter above
referred to.

The rule as to the payment and discharge of negotiable instru-
ments is that payment of the bill or note must be made to the rightful
holder or his authorized agent. "In general, a payment is valid as
against other parties when made in good faith, and in ignorance of all
facts which impair the holder's title. * * * If payment is made
to one who holds under a blank indorsement, his possession will be
presumptive evidence of his title and right to receive the money.
Any one in possession is entitled prima facie to receive payment of a
note payable to bearer, or to 'A., or bearer.' If it is so payable, even
a payment made in good faith to a thief or finder who is in actual pos-
session will be good. * * * But a payment made through neg-
ligence to one who is neither the rightful holder nor a bona fide
purchaser before maturity, after notice of loss, will not be sufficient."
3 Rand. Com. Paper, § 1444, and cases cited. And the same author
says in § 1467 that, "if the indorsement is for an illegal consideration,
such as a gambling debt [and that is this case], payment made to the
indorsee after notice of that fact will be of no avail as against the
indorser:" citing *Bank* v. *Spaids,* 8 Ill. App. 493, and *Wheeler* v.
*Winn,* 38 Vt. 122. Under the above doctrine, which appeals to us
as both just and sound, it is apparent that the defense of payment to
Maxwell, the indorsee—which is the only defense in the case—
turns entirely upon the question as to whether such payment was
made in good faith, and without notice of the defect in Maxwell's
title; for, as before stated, payment by the maker to a party who
claims to be a bona fide holder is not sufficient to protect the maker
against the claim of the real owner, when made after notice. *Bain-
bridge* v. *City of Louisville,* 83 Ky. 285, 4 Am. St. Rep. 153.

The remaining question relates to the sufficiency of the evidence
as to defendant's notice. The jury found that the defendant had
notice, and the trial court refused to grant a new trial upon the
ground of the alleged insufficiency of the evidence to sustain such
finding. Our inquiry is limited to ascertaining whether there is
any legal evidence in the record fairly tending to sustain this find-
ing. "Under an established rule of practice, this court will not
ordinarily disturb a verdict upon a mere question of fact, where
there is substantial evidence upon which the verdict may rest."
*Heyrock* v. *McKenzie,* 8 N. D. 601, 80 N. W. Rep. 762; *Taylor* v.
*Jones,* 3 N. D. 235, 55 N. W. Rep. 593; *Black* v. *Walker,* 7 N. D.
414, 75 N. W. Rep. 787; also, *Flath* v. *Casselman,* 10 N. D. 419,
87 N. W. Rep. 988. We find the evidence contained in the
record sufficient to support the finding of the jury on this

point. It discloses that plaintiff went to defendant's place of business in the morning of the 19th,—the next day after he had made the deposit,—and before the bank opened for the day. Maxwell and Mr. Movious, the president of the bank, were then on the inside of the building. After entering, the plaintiff called Maxwell aside, and tried to induce him to return the check, or all or a part of the money, telling him that he had made him sign the check, and had practically stolen it. Maxwell refused. The paying teller's window was opened just at that time, and Maxwell stepped up, and presented the check to Nellie Sanders, the paying teller, for payment. The plaintiff said to her: "Madam, I cancel that check. I don't want you to pay it." Plaintiff testifies: "When I demanded the cancellation of the check, she took the check, and asked if that was my name, and I said, 'Yes,' and she said * * * I would have to go and see Mr. Movious. * * * I went and called him, and he came out, and she had paid the money to Maxwell, and he was going out the door. I asked him [Movious] why that money was paid, and he said, 'Because your name was on the back;' and I said, 'I shall have to try and get that money back.' 'Well,' he said, 'you go ahead, and find a way to get it back.'" Nellie Sanders, in narrating the circumstances under which the payment was made, says: "Mr. Maxwell came in a little before nine in the morning. The outside door was open. We had not yet opened the curtain. E. A. Movious, the president of the bank, came in, and told Miss Movious (the assistant cashier) that she had better open up; that it was not quite nine, but she had better open up, as he thought Ralph Maxwell wanted something. * * * As soon as the curtain was up, Maxwell pushed the check through the cashier's window. It was already indorsed by himself and John Drinkall. * * * I turned, and took up the signature book, to see that it was properly indorsed, and as I did so Maxwell said: 'It is all right. I have indorsed it. I am good for it.' Drinkall stood right by Maxwell, and said, before it was paid, 'I demand it canceled.' Maxwell replied, 'That is all right.' After seeing that the signature was correct, I proceeded to count out the money. While I was doing this, Drinkall several times said, 'I demand it canceled.' To each such statement Maxwell replied, 'That is all right or some such answer. I supposed he was talking to Maxwell, and because he was under the influence of liquor I paid less attention to him. Maxwell said to him, 'You can go and see Emil' (meaning Movious). He was in the private office. He went in there, and when he returned I had paid the check to Maxwell." E. A. Movious testifies in part: "After the bank had opened, Drinkall and Maxwell were standing together in the office. I don't know what they were talking about. As soon as Drinkall came in, he said to me, 'I want that canceled;' and I said 'What do you want canceled?' and he said, 'I want that check or money.' * * * I stepped out to him, and Maxwell was standing in front

of the bank window, and had the money counted. * * * I said, 'Is that your signature on the back?' and he said 'Yes.' 'Well,' I said, 'I don't know how I can help you. It is paid;' and I passed it back." There is other testimony in the record going more into the details of payment, but that above quoted is sufficient for the purpose of this decision. We have reached the conclusion that the facts as detailed were sufficient to warrant the jury in finding that defendant had notice of the defect in Maxwell's title, and to make its act in paying the check to him an act of bad faith. Section 5118, Rev. Codes, provides that "every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact and who omits to make such inquiry with reasonable diligence is deemed to have constructive notice of the fact itself." The plaintiff had deposited this money only the day before. Movious admits that he knew Maxwell conducted a gambling establishment. It appears that he ordered the bank opened before the regular time to accommodate Maxwell, and, further, that the check was paid to Maxwell in open defiance of the plaintiff's personal and repeated protests against its payment to him. These facts and circumstances might well be held by the jury to be sufficient to put a prudent man upon inquiry as to how Maxwell had obtained the check, and that an inquiry made with reasonable diligence would have disclosed the entire transaction is entirely apparent. A simple inquiry by the bank's officers for his reasons for demanding that Maxwell should not be paid would have made known the specific defect in the latter's title.

But we are also of opinion that the evidence is sufficient to sustain a finding by the jury that defendant had not only constructive notice, but actual notice, that plaintiff, and not Maxwell, was the owner of the note, and entitled to payment. It is true, the language he used, "I cancel that check; I don't want you to pay it," would be more appropriate to a countermand by the maker of a check, in which case the language would be strictly within the legal right of the party countermanding payment. But in considering the question of notice we are not controlled by the technical language used. The question here is whether Drinkall brought home to the bank knowledge of Maxwell's defective title before it parted with its money. We are constrained to hold the evidence sufficient for that purpose. The language of his demand, when taken in connection with the other circumstances, would fairly mean that plaintiff claimed that he, and not Maxwell, was the owner of the check. Prima facie, Maxwell was entitled to receive payment; but when his title was challenged by the plaintiff, as it was, the defendant paid it at the peril of having to pay the rightful owner.

Finding no error in the record, the judgment is affirmed. All concur.

WALLIN, C. J. I concur in the result. Upon the question of notice to the bank, I am of opinion that there was competent evi-

dence tending to show notice, and that the question of notice was properly submitted to the jury.

(88 N. W. Rep. 724.)