(55 N. W. Rep. 583.)

---

## THEOPHILUS L. TAYLOR *vs.* JOHN R. JONES.

Opinion filed April 14th, 1893.

**Sufficiency of Evidence to Sustain Verdict.**

> The claim that a verdict is without support in the evidence cannot be maintained when the explicit and consistent testimony of one witness sustains it, even though a number of witnesses may as explicitly testify to the contrary.

**Retaining Property of Another for Debt Due Does Not Constitute a Pledge.**

> The fact that one party, claiming under a legal right, however unfounded, declares to another party that he will hold certain property of such other party until a debt owing by such party to him is secured, and that such other party remains silent, and makes no objection thereto, does not constitute a pledge of such property as security for such debt.

Appeal from District Court, Richland County, *Lauder*, J.

Action by Theophilus L. Taylor against John R. Jones, for conversion. Judgment for plaintiff. Defendant appeals.

Affirmed.

*McCumber & Bogart*, for appellant.

The verdict was against the clear weight of the testimony and should be set aside. *Mead* v. *Courve*, 8 At. Rep. 374; *Hicks* v. *Stone*, 13 Minn. 434; *Garrett* v. *Greenwell*, 4 S. W. Rep. 441; *Sandwich Manufacturing Co.* v. *Feary*, 33 N. W. Rep. 485 ; *Kaemmever* v. *Hauser*, 29 Ill. App. 576; *Jones* v. *McWalley*, 11 S. E. Rep. 544; *M. P. Ry. Co.* v. *Summers*, 14 S. W. Rep. 779; *Helfrich* v.

*Hogden City Ry. Co.*, 26 Pac. Rep. 295; *Atchison & C. Ry. Co.* v. *Wagner*, 7 Pac. Rep. 204; *Cummings* v. *Winters*, 28 N. W. Rep. 303. The silence of Taylor was an assent to the proposition made by Jones. Bishop Cont. § § 284-290 and 229; I Parsons Cont. 476; *Abbot* v. *Herman*, 7 Me. 118; *Preston* v. *Am. Linen Co.*, 119 Mass. 400; *Leathers Mfg's Nat. Bank* v. *Morgen*, 6 Sup. Ct. Rep. 657; *Steel* v. *Refining Co.*, I Sup. Ct. Rep. 389.

*W. E. Purcell* and *L. B. Everdell* for respondent.

A court will not set aside a verdict as being against evidence, because on examination they might have come to a different conclusion from that arrived at by the jury. *Wendall* v. *Stafford*, 12 N. H. 171, *Mays* v. *Callwin*, 6 Leigh 230. A mere preponderance of evidence against a verdict is no ground for granting a new trial. I Graham & Watt on New Trials, 380; *Johnson* v. *R. R. Co.*, 11 Minn. 204; *De Rochebrune* v. *Southeimer*, 12 Minn. 78; *State* v. *Herrick*, 12 Minn. 132; *Canefield* v. *Bogie*, 2 Dak., 465; *Moline Plow Co.* v. *Gilbert* (Dak.) 16 N. W. Rep. 500; *King* v. *Meyers*, 35 Cal. 646; *Todd* v. *Brannan*, 30 Ia. 439; *Barret* v. *U. S.* 9 Wall, 38; *Alveron* v. *U. S.* 8 Wall. 337.

BARTHOLOMEW, C. J. Taylor, the plaintiff below and respondent herein, sued John R. Jones, the defendant and appellant, in conversion for the value of a team, harness, and buggy. There was a verdict for plaintiff, a motion for a new trial denied, and judgment on the verdict. It is uncontroverted that respondent was the owner of the property prior to bringing this action, and that it was in appellant's possession; that respondent demanded the same, and appellant refused to deliver it. The answer alleged, in substance, that on the 2nd day of June, 1891, respondent delivered the property to appellant, as a pledge to secure an indebtedness that respondent owed to appellant, and that appellant held the property under and in accordance with the terms of the pledge, and that the debt had not been paid. That the debt existed and was unpaid seems to be conceded. The case was made to turn entirely upon the truth or falsity of the allegation

that the property was pledged. Appellant presents the case in this court under three heads, which cover all his assignments of error: *First*, insufficiency of the evidence to justify the verdict, and herein error of the court in refusing to direct a verdict for appellant, and in refusing a new trial; *second*, error in refusing and giving instructions; *third*, error in admitting and excluding evidence.

From a mass of testimony we summarize the following facts as sufficient to render our rulings intelligible: Prior to June 2nd, 1891, one Holding recovered a judgment against the respondent, Taylor, and caused execution to issue thereon, under which the sheriff of the proper county seized the horses and harness in question. Taylor claimed this property of the sheriff as exempt from sale on execution, but the sheriff refused to recognize this claim, and had advertised the property for sale on said June 2nd, 1891. Taylor desired to preserve this particular property, and also to preserve his right of action against the sheriff for selling exempt property. This he could properly do. See *Northrup* v. *Cross*, 2 N. Dak. 433, 51 N. W. Rep. 718. The day before the sale the respondent saw one David Jones, the brother and agent of appellant, and one Malloy, appellant's bookkeeper. Appellant was absent. Respondent desired David Jones and Mr. Malloy to go with him the next day to Forman, where the sale was to take place. The witnesses differ as to respondent's object in having David Jones and Malloy present at the sale. Respondent testifies that he desired them to help him to raise money in case the property should be bid up at the sale to a figure in excess of what money he had. David Jones and Malloy testify that he wanted them to attach the property on his debt to appellant, in order to head off certain other creditors. Appellant was notified by telegram to be present at Forman, but it was feared he could not get there before the sale. Early on the morning of June 2nd, David Jones and Mr. Malloy went with respondent to Forman. They immediately saw Mr. Ellsworth, an attorney, and, after consultation, an attachment action was commenced by said attorney in

the name of appellant against respondent, and a writ of attachment procured and delivered to the sheriff, who immediately levied it upon the property. This was known to respondent before the hour fixed for the sale. At the sale the property was bought by David Jones, in his own name, but with money furnished entirely by respondent. Soon after the sale, appellant reached Forman. It is proper here to state that respondent's debt to appellant was for lumber purchased, and appellant had it secured by mechanic's lien. When appellant and respondent met at Forman, appellant began to upbraid respondent for getting his (appellant's) men to bring the attachment action and thus invalidate the mechanic's lien, and declared that he would hold the property until he was secured. Appellant then testifies, in detail, that respondent not wishing to have further expense, asked him to release the attachment, saying that he would turn the property over as a pledge until he got other sufficient security. To this appellant agreed, and the attachment was released, and the horses and harness, and, under the advice of Mr. Ellsworth, the buggy also, were turned over to David Jones, as pledge holder for appellant. A careful scrutiny of the testimony fails to disclose that any other witness says anything about a pledge. All of the other witnesses seem to have understood that the team and harness were held by virtue of the purchase of David Jones at the sheriff's sale. David Jones testifies: "I bid the team in for the interest of John R. Jones. I bid it in myself, in my own name." "I bid the team in for John R. Jones. I held the team by that bid. I hold the team." "I said, at the time I purchased this property, I purchased in the interests of John R. Jones." "It was to be given back by myself or John R. Jones, to him, [Taylor;] no difference which." "I held them as John R. Jones' property until the thing was settled,—until a bill of sale was made to Mrs. Taylor." Speaking of the agreement with respondent, he says: "The horses should be in my charge, or in my brother John's, himself, until he settled the account." The witness Malloy narrates the circumstances attending the sale;

that respondent gave him the money to purchase the property, and he turned it over to David Jones; that, by the subsequent agreement, the property was to remain in David Jones' possession until the account was secured, and then a bill of sale was to be made to Mrs. Taylor. Mr. Ellsworth, the attorney, was also a witness for the appellant. In speaking of what took place after the sale, and at the time when it is claimed the pledge was made, he says: "He [Taylor] said he wanted it understood that the sale, or the purchase of this property at the sale, was a bona fide purchase, and that he would arrange it with Mr. Jones in a short time." He further said that, when the account was secured, a bill of sale of the property was to be made to respondent's wife, Mrs. Taylor; that respondent wanted it done in that manner, so that no other party could seize the property; that, as the buggy had not been sold, he (witness) suggested to Mr. Jones, in Taylor's presence, that it would be better if Taylor would turn over the buggy also, to which Taylor agreed; that he then sent for the sheriff, and gave him a written order releasing the attachment. Respondent, in his testimony, claims that he furnished the money to Malloy to buy the property in for him; that instead of doing so, Malloy turned the money over to David Jones, who bought the property in his own name. He unequivocally denies that the property was ever turned over as a pledge or otherwise; claims that it was taken by appellant or his agents after the sale, without his (respondent's) knowledge or consent; and denies all knowledge that the attachment was released. He admits that appellant told him that the attachment had invalidated his lien, and that he would hold the team, but says that he made no reply; admits also, that Mr. Ellsworth advised him to turn over the buggy, but says he made no reply. Under this evidence, not only was there a conflict upon the question of a pledge, but the preponderance was clearly against it. The proof tended to show that the parties treated the purchase by David Jones at the sheriff's sale as passing the title of the property to him, which could only be divested by a resale, and that David Jones, acting

in the interest and at the instance of his brother, determined to hold the property so purchased at the sale until respondent secured the account owing to his brother, when a bill of sale was to be made to respondent's wife. The buggy had not been purchased at the execution sale, but had been attached, and the attorney testifies that he suggested to Mr. Jones that it would be well to have Mr. Taylor turn that over also, and that Taylor consented so to do. Taylor says he simply made no reply. Several witnesses testify that Taylor did, in fact, turn the buggy over. Taylor as explicitly swears that he did not. The question was for the jury. Respondent's testimony is all consistent with the theory that he did not turn the buggy over as a pledge or otherwise, and the fact that he is opposed by a number of witnesses does not render the verdict so entirely unsupported by evidence as to warrant a court in disturbing it. It may be true, as urged by learned counsel, that if respondent knew that appellant understood him to consent to turn over the property, or any portion of it, as a pledge, and if he knew that, relying upon such consent, appellant dismissed the attachment, and thus altered his condition to his prejudice, respondent would be estopped from denying his consent. The trouble in applying the proposition in this case is the fact that respondent swears he had no knowledge that appellant released the attachment. If that be true, there is no element of estoppel in the situation. We may add that respondent's statement has strong corroboration in the circumstances, as they seem to have been understood by the parties. If the horses and harness passed to David Jones by virtue of the purchase, and were to be held by him unless security was given for the account, then the attachment became a mere useless appendage, as the value of such property far exceeded the amount of the account, and it would be only natural that respondent should give no further thought to the attachment. There is a direct conflict in the evidence as to whether or not respondent consented that the horses and harness might be held even under the purchase. This discussion of the evidence demonstrates, we think, that the

verdict has substantial support, and that there was no error in refusing to direct a verdict for appellant, or in denying the motion for a new trial, on the ground that the verdict was not sustained by the evidence.

This also practically disposes of the error assigned on the refusal to give an instruction asked by appellant. This instruction, without qualification or condition, stated that if the jury found that on said June 2nd, 1891, defendant told plaintiff that he would hold said property as security for his debt, and plaintiff made no objection thereto, but allowed defendant to take the property, this would be an assent upon the part of the plaintiff to such holding, and the verdict must be for defendant. Now, without holding that mere silence and inaction could be more than evidence of assent, in any case where the other party had not been induced thereby to alter his condition to his prejudice, it yet seems too plain for argument in this case that if appellant was claiming a legal right to hold the property, either under the purchase by David Jones or under the attachment in his own name, and respondent silently acquiesced in such claim of right, such fact would fall far short of constituting a contract of pledge between the parties. Moreover, the instruction disregards respondent's testimony that the property was taken without his knowledge or consent.

It is pressed against the charge of the court that it makes unduly and unnecessarily prominent the thought that a pledge is a contract, and that it takes two persons to make a contract, and that their minds must meeet on the same line. Both must understand the transaction in the same way, and it must be voluntarily entered into. We think the criticism not applicable. There was but one issue in the case, and that was upon the allegation in the answer that respondent pledged the property to appellant as security for the debt. Appellant must succeed, if at all, upon the theory of a pledge. Possession by other means would not help him. It was entirely proper for the court to specifically define a

N. D. R.—16.

pledge and its constituent elements; and to guard the jury against any mistake by reason of the fact, if such it was, that respondent acquiesced in appellant's claim of legal right to hold the property, it was pertinent for the court to impress upon the jury the voluntary nature of the contract of pledge.

Numerous errors are assigned upon the admission and exclusion of testimony. Some of these have been already indirectly answered, and none of them are of sufficient general importance to warrant any lengthy notice. Some days after the transaction, on June 2nd, appellant had the property at the town of Straubville. Early in the morning, respondent and another party sought to get possession of the property by stealth or force, or both. Something of an altercation took place between appellant and respondent. It was sought to give in evidence all the details of that difficulty by appellant when on the stand. This was objected to, and the court limited the witness to "what was said in regard to your holding the team, or right to hold it, or any agreement you and Mr. Taylor had before that." Certainly, that was broad enough. Anything further could only prejudice the jury. The same remark applies to the third error assigned. The evidence excluded under the fourth and sixth assignments would necessarily have been the same whether the property was held under the purchase or the attachment or the pledge, and hence was incompetent to establish a pledge. The answer excluded under the fifth assignment was purely a conclusion of law. The seventh assignment is more difficult. The respondent, while on the stand, was asked: "Did you in any way consent to John R. Jones', or any other person for him, holding this team as security for any debt you might be owing him?" This was objected to, as calling for a conclusion, and not for a fact, and the objection overruled, and in this we think the court did not pass the bounds of discretion necessarily lodged with a trial court in excluding and admitting testimony. This was on rebuttal. Appellant's witnesses had given the facts from their standpoint, and had repeatedly asserted that respondent did so consent, and we do

not think that it was improper to permit respondent, after he had given all the facts from his standpoint, to testify that he did not consent. The objection is argued on the theory that, on his own testimony, respondent had consented as a matter of law. We have already ruled that such was not the case. The other assignments require no notice further than that they have already received. No error in the record has been shown, and the judgment below is accordingly affirmed. All concur.