# JOSEPH JAMTGAARD v. GREENDALE TOWNSHIP, in Richland County, North Dakota.

### (151 N. W. 771.)

**Government survey — section mounds — location — quarter section mound — minutes — records — field notes — absence of — testimony of transit — man who made survey — competent.**

Where the section mounds in a government survey are definitely located and a dispute arises as to the location of a quarter section mound and the claim is made that it is 57 feet west of the line between the said section mounds, and there is nothing in the minutes, the field notes, or the report of the government surveyor at Washington to show that said line was not in fact a straight line, it is competent for a transit man to testify that it was he who actually made the survey and ran the line, and to testify as to the facts of the case and how such line was run, and that it was in fact a straight line, even though the certificate of the surveyor which is filed at Washington is signed by the contractor merely, and does not disclose the fact that the survey was made by any other person than those in said report mentioned, and does not include the name of the witness. Such testimony is *held* to be, not for the purpose of disputing the original survey, but of showing what the location of the surface line in fact was, and that it accorded with the location which would naturally be presumed from the record filed.

Opinion filed February 25, 1915.

Appeal from the District Court of Richland County, *Allen,* J.

Action of ejectment. Judgment for defendant. Plaintiff appeals. Reversed.

Statement of facts by BRUCE, J.

This appeal is from an order of the district court of Richland county denying appellant's motion for a new trial. The action is in ejectment for the recovery of the possession of an irregular strip of land containing 3 29/43 acres.

About six years prior to the commencement of this action appellant purchased and went into possession of the west half of section 3, township 129 north, of range 49 west, in Richland county, North Dakota, and has continuously remained in possession thereof up to the present

time.    The respondent township is one of the duly organized and exist-
ing civil townships in Richland county, and embraces the land involved
in the action.    The point in dispute is the location of the section line
separating sections 3 and 4 in the township and range above named.
There is a public highway running north and south between said sec-
tions 3 and 4.    It is conceded by all parties that at both the north and
south ends of this section line the highway is located exactly on the
line as originally surveyed.    Beginning at the north end of this section
line and proceeding south, the highway continuously and uniformly de-
flects to the east until the quarter line is reached.    At this point the
variation to the east is 57 feet.    Precisely at the quarter line the high-
way abruptly changes its course, and, proceeding south, continuously
and uniformly deflects to the west until the south end of the section
line is reached, and at the south end as at the north end, the highway
is exactly on the section line.    As now existing, the highway forms two
sides of an obtuse angle, the vertex of the angle being exactly at the
quarter line.    It is appellant's contention that this section line, as
originally surveyed, was a straight line, and was located at the quarter
line, 57 feet west of where the highway is now located, and that the
strip of land, consisting of two right angle triangles, with the base of
both at the quarter line, and lying between the highway as now located
and a straight line north and south from the two ends of this highway,
belonged to appellant, as forming part of said section 3, and the action
is brought against the township, which claims to be entitled to the
possession of the same for highway purposes.    Respondent, on the other
hand, contends that the highway, as now located and as shown on these
plats, follows exactly the original survey of the section line separating
said sections 3 and 4; that the original quarter mound built by the
surveyors who made the original survey, and the quarter post set in
said mound, were located exactly where the middle of the highway now
crosses the quarter line.    Respondent does not contend that this mile
of highway extends in a straight line.    It is not disputed that the vari-
ation from a straight line at the quarter line is 57 feet.    Respondent,
however, contends that this deviation was made in the original survey,
and that, whether straight or crooked, appellant and all other persons
are bound by the survey as in fact made.    Appellant contends that the
highway does not follow the line of the survey, but had its origin at

a time when the country was sparsely settled and the land open and unimproved, and when no effort was made to have highways conform to section lines; that the section line as originally run was a straight line, and that the original mound and stake at the quarter line were in fact located on this straight line, and 57 feet west of the point where the highway crosses the quarter line.

*W. S. Lowry* and *W. S. Lauder,* for appellant.

We concede that it is the settled law of this state that in disputes as to the boundary lines of lands derived from the government, the monuments made or constructed upon the original government survey control, and that this is true whether the original survey was correctly made or not. Radford v. Johnson, 8 N. D. 182, 77 N. W. 601; Propper v. Wohlwend, 16 N. D. 110, 112 N. W. 967; Tyler v. Haggart, 19 S. D. 167, 102 N. W. 682; Unzelmann v. Shelton, 19 S. D. 389, 103 N. W. 646; Matheny v. Allen, 129 Am. St. Rep. 996, and extended note, 63 W. Va. 443, 60 S. E. 407.

The witness Burbank was present when the original survey was made; he saw the lines run; he was present when the quarter mound was made, and the quarter post set; that he knew this mound and post were placed on a straight line between the ends of the section line, and were placed 57 feet west of the center of the highway as it now crosses the quarter line; that he knew all about all the facts in relation to such matter. Plaintiff's offer of proof embodied all these facts. The examining party has the right to make an offer of proof of facts which he assumes his question will elicit. Eagon v. Eagon, 60 Kan. 697, 57 Pac. 942.

Such evidence as the offer included was competent for the purpose offered. Russell v. Maxwell Land Grant Co. 158 U. S. 253, 39 L. ed. 971, 15 Sup. Ct. Rep. 827; Knight v. United Land Asso. 142 U. S. 161, 35 L. ed. 974, 12 Sup. Ct. Rep. 258; McBride v. Whitaker, 65 Neb. 137, 90 N. W. 966; Rood v. Wallace, 109 Iowa, 5, 79 N. W. 449.

Assuming that the approval of the survey made by blanding was in the nature of a judgment, and that the record thereof at Washington had the force of the record of a judicial proceeding, it is evident that appellant, in the proof which he offered, and which was rejected, was

not attempted to "impeach" or "impair" the original survey. Bagby v. Warren Deposit Bank, 20 Ky. L. Rep. 1357, 49 S. W. 177.

*Purcell, Divet, & Perkins,* for respondents.

If the evidence offered had been received, and a verdict rendered for plaintiff, the court would have been required to set it aside. Luick v. Arends, 21 N. D. 614, 132 N. W. 353.

Field notes of an official surveyor are admissible and have the force of a deposition, because made under his official oath. Kirby v. Lewis, 39 Fed. 75.

A survey is not complete until it is filed and approved. United States v. Curtner, 38 Fed. 10.

A surveyor of public lands is not a clerk or employee, but a public officer acting under oath, and making return of his work under a further oath as to its correctness. A witness cannot give evidence which would show that the survey adopted by the government was not made. The question is not what the witness did, but what the government, through its official surveyor, did. Kelley v. Dresser, 11 Allen, 33; Pollard v. Dwight, 4 Cranch, 421, 2 L. ed. 666.

Where a record is required to be kept, such record is the best evidence. 17 Cyc. 497, 498; .Benninghoof v. Finney, 22 Ind. 101; Bovee v. McLean, 24 Wis. 225.

And such records cannot be contradicted or supplemented by parol. People ex rel. Greenwood v. Madison County, 125 Ill. 334, 17 N. E. 805; 17 Cyc. 696, last ¶ in note; United States v. Scott, 25 Fed. 470; Re Prickett, 20 N. J. L. 134; Griffin v. Rising, 2 Cush. 75; Saxton v. Nimms, 14 Mass. 319; Kelley v. Dresser, 11 Allen, 33; Boynton v. People, 155 Ill. 66, 39 N. E. 622; Rood v. Wallace, 109 Iowa, 5, 79 N. W. 451.

One cannot offer a record in evidence and then attempt to show that it is incorrect in part. Monk v. Corbin, 58 Iowa, 503, 12 N. W. 571.

The basic reason why matters connected with the government surveys are conclusively settled by action of the department, is that they concern the exercise of political functions, and the department and its officers constitute special tribunals for their settlement, and the courts cannot go back of such settlement. Knight v. United Land Asso. 142 U. S. 176, 35 L. ed. 979, 12 Sup. Ct. Rep. 258; Russell v. Maxwell

Land Grant Co. 158 U. S. 253, 39 L. ed. 971, 15 Sup. Ct. Rep. 827; McBride v. Whitaker, 65 Neb. 137, 90 N. W. 970; Throop, Pub. Off. § 645; 17 Cyc. 496, 497, note 75.

A verdict will not be disturbed to enable a party to put in, but in a different form, evidence of that which he already has in the record. Ayres v. Duprey, 27 Tex. 593, 86 Am. Dec. 659.

Bruce, J. (after stating the facts as above). Although there are numerous assignments of error in this case, the real and only controversy is over the location of the original monument at the quarter line running east and west through the section, and in this connection whether the learned trial court erred in rejecting the following offer of proof: "The plaintiff now offers to prove by the witness on the stand, John Q. Burbank, that in the summer and fall of the year 1874 he was employed by one James C. Blanding; that the said James C. Blanding then held a contract with the United States to subdivide into sections and quarter sections congressional township No. 129 in range 49, now embraced in Greendale township, and to do other surveying of the same kind and character; that in the year 1874, and on or about the month of September of said year, he, the said witness, while still in the employ of the said James C. Blanding, himself in person surveyed and ran the section line separating sections 3 and 4 in said township, and himself in person made the field notes of said survey and also ran all the other lines subdividing the said township into sections and quarter sections; that the said line separating said sections 3 and 4 as originally surveyed by the said witness as above stated was run in a straight line from north to south and from south to north, and that there was in fact in running said line no variation to the east from a straight line; that the digging of the pits and the building of the mounds and placing of the stakes in connection with the survey of the said township as aforesaid, by the said witness, were dug, built, and set under the direct supervision of the said witness, and among others the pits, mound, and stake at the quarter line or half section corner at the southwest corner of the northwest quarter of section 3, and the southeast corner of the northeast quarter of section 4, and that the said mound was built and a proper stake inserted therein on the section line as surveyed by this witness as before stated, and that the

said mount was built and said quarter stakes set on a straight line directly on the section line as surveyed by the witness as before stated, and that the said section line was surveyed strictly in accordance with the field notes as shown in exhibit "B;" that the center of the highway as now existing, where the same crosses the quarter line separating the southwest quarter of said section 3 from the northwest quarter of said section 3, is 57 feet directly east of the spot where the said mound was built and the said quarter stake set at the time the said survey was made by this witness; that the said James C. Blanding did not make or superintend or was not connected with any other or different survey of the said township and range at any time during the said year of 1874."

To this offer the following objection was made: "To the offer as contained in exhibit "J," taken as a whole, the defendant objects upon the ground that said offer is an offer to prove things as to which the witness has not shown himself competent to testify; that no proper foundation has been laid for the testimony of the witness upon the matters and things contained in the offer; upon the further ground that there is contained in said offer matters and things irrelevant and immaterial to any issue involved herein; that the said offer contemplates proof of a survey by a person not shown to be a competent person to make said survey under the laws of the United States, and a person shown by the record not to be authorized to make said survey or to take any part therein, and that as the said offer tends to contradict by parol the records in the Department of the Interior in regard to the making and return of the official survey; that in so far as said offer attempts to prove a survey by anyone except the deputy surveyor acting under his oath of office, it is irrelevant and immaterial, and the record now is shown that the official survey finally adopted by the government was the survey of James C. Blanding mentioned in the offer, and not the survey of this witness; and upon the further ground that this witness has not shown himself competent to testify, and could only testify as to his conclusion as to the connection of James C. Blanding with any other or different survey that may have been made of the lands in question."

The objection of respondent is to the effect that appellant, to establish the fact that the original survey was on a straight line between the section corners, introduced in evidence a certified copy of the field notes

of the survey; that these field notes purported to be under the official oath of James C. Blanding; that the record shows that the survey accepted and acted upon by the government was made by James C. Blanding, and that the plaintiff and appellant by his offer seeks to show that such field notes were not made by Blanding, but by the witness, Burbank, and then to show that in the survey the line ran in a straight line, and that he is thus seeking to dispute the government record, which he cannot do.

There would, we believe, be much merit in this contention if the plaintiff and appellant were in any way seeking to dispute the survey or the field notes which were certified to by James C. Blanding. The offer of counsel, however, was not to dispute the record, but rather to corroborate it, and to overcome the contention of the respondent that the survey which had been made according to such notes, and which would apparently seem to have been made along straight lines, was not in fact so made. We find, indeed, nothing in the field notes certified to by Blanding which locates the quarter section mound at the point which is contended for by the respondent, or which would lead anyone to believe that it was not in a straight line with the section mounds, which are conceded to have been in a straight line with one another and with those which preceded them. The offer of appellant, in short, was not to dispute the record at Washington, but to show that a line that was run between two fixed points was—what it should have been and what everyone would have a right to assume it to have been—a straight line. The situation, indeed, is a peculiar one. The respondents base their claim upon the proposition that in making the original survey, for some unaccountable reason, the transit man deflected his instrument to the east until he came to the quarter section line and then deflected it again to the west, and that not only did he violate the geometrical maxim that a straight line is the shortest distance between two given points, but the ordinary rules of surveying, and seeks to prove this by the testimony of outside witnesses as to their remembrance as to the location of a mound which was claimed to have been placed at the quarter section line. The appellant, however, is not allowed to prove the falsity of this attack upon the plain import of the original survey in the records at Washington as they would usually be construed and understood, and this by the testimony of the very

man who ran the transit and made the survey. It may be true that if the minutes as recorded at Washington had definitely located the quarter section monument, and this outside of the straight line, the testimony of the transit man would have been incompetent, but this was not the case.

It is true that in order that titles may be established with a reasonable degree of certainty, the courts have uniformly held that the record of what the survey actually is may not be contradicted, and that the report or record of the government surveyor is final, except where the monuments may be definitely located.

. It is also true that under the law and his contract, a deputy surveyor is required to include as a part of his record of the government survey the names of his chainmen, flagmen, and mound builders, and that in the report made by Mr. Blanding the name of the witness does not appear. We do not believe, however, that the report as to names of the assistants was ever intended to be final and conclusive, and we are quite sure that this part of the report may be contradicted where such contradiction is not made for the purpose of disproving the survey, but merely for the purpose of explaining it. "Whether," says the Supreme Court of the United States in Russell v. Maxwell Land Grant Co. 158 U. S. 253, 259, 39 L. ed. 971, 973, 15 Sup. Ct. Rep. 827, "a survey . . . is correct or not is one thing, and that, as we have seen, is a matter committed exclusively to the Land Department, and over which the courts have no jurisdiction otherwise than by original proceedings in equity. While, on the other hand, where the lines run by such survey lie on the ground or whether any particular tract is on one side or the other of that line, are questions of fact which are always open to inquiry in the courts. In the case before us the offer was not to show that the land in controversy was one side or other of the line established by the survey. On the contrary it was conceded that it was within the limits of the survey, and the offer was simply to show that that survey was inaccurate, and that the lines should have been run elsewhere; but this is not a matter for inquiry in this collateral way in the courts."

The evidence sought to be introduced was, in our opinion, based upon a more accurate foundation than that of the witnesses who merely testified as to their remembrance of the location of the quarter section

monument. If this is the case, and we think it is, there is no merit in the contention that, even if the evidence was improperly excluded, no prejudice resulted to the plaintiff and appellant as the testimony of the other witnesses as to the location of the mound was overwhelming and conclusive. It is well settled, indeed, that a verdict cannot be directed if there is a substantial conflict in the evidence, even though those testifying in favor of such verdict largely outnumber those who oppose it; in other words, where different minds might reasonably and legally arrive at different conclusions. See Taylor v. Jones, 3 N. D. 235, 55 N. W. 593; Jackson v. Grand Forks, 24 N. D. 601, 45 L.R.A. (N.S.) 75, 140 N. W. 719.

The evidence sought to be introduced was, we believe, competent. It was really as high a quality of evidence and as conclusive as could under the circumstances be obtained. It was in support of, and not in contradiction to, the natural import of the field notes and of the government survey. It was opposed, it is true, by the testimony of numerous witnesses, but that testimony was, like the testimony as to all monuments and boundaries which have long since departed, and which is based upon remembrances alone of a long past fact and upon conclusions merely, by no means conclusive.

We are, indeed, not prepared to hold that a certificate of one holding a government surveyor's contract, and to the effect that he has made a certain survey in strict accordance with the laws of the United States and his contract and manual of instructions, is in all cases conclusive of the fact that he himself personally operated the transit and personally ran the line. The field notes and record of the survey are, for many good reasons, held to be conclusive, but even this rule does not apply where there is a conflict between the field notes and the monuments, and where such monuments can be definitely located. The courts, indeed, at any rate those of our western states, may take judicial notice that large surveying contracts were taken even by men who were absolutely ignorant of the use of transits and compasses, and that the exception, rather than the rule, was for the contractor to run the instrument himself instead of employing transit men to do the work. We cannot, as judges, be ignorant of that which we, as men, must know.

So, too, the case is in no way different from one in which the location of a monument is in dispute and a bystander who saw it located in

the first place seeks to testify as to his knowledge of the fact and as to the location. Numerous farmers were allowed to testify as to their remembrance of the location of the monument which they admit had disappeared long before the trial of the action. They seek to disprove the clear import of the field notes and of the records at Washington, and this by the memory of a long past view of estimate merely. Surely the testimony of the transit man was as competent as was theirs.

The judgment of the District Court is reversed and the cause is remanded for further proceedings according to law.