ANDERSON, STATE BANK EXAMINER, *v.* BANK OF TUPELO.*

(Division B.    May 12, 1924.)

[100 So. 179.    No. 24022.]

1. BANKS AND BANKING. *"Cashier's check" defined.*
   A "cashier's check" is a bill of exchange drawn by a bank upon itself, and accepted by the act of issuance.

2. BANKS AND BANKING. *Instrument held cashier's check.*
   The following instrument of writing held to be a cashier's check: "At sight pay to the order of the Bank of Tupelo, five hundred dollars with exchange.    To People's Bank, Baldwyn, Miss. [Signed] W. M. B. Cox, Prest."—when Cox, as a matter of fact, was the president of the People's Bank of Baldwyn.

3. BANKS AND BANKING. *Cashier's check guaranteed.*
   Under section 3596, Hemingway's Code, a cashier's check is guaranteed.

---

*Headnote 1.  Cashier's Check, 11 C. J., p. 23;  2.  Cashier's Check, 11 C. J., p. 23 (1925 Anno.);  3.  Banks and Banking, 7 C. J., section 15 (1925 Anno.).

APPEAL from chancery court of Lee County.
HON. A. J. MCINTYRE, Chancellor.

Action by the Bank of Tupelo against E. F. Anderson, State Bank Examiner.  Judgment for plaintiff, and defendant appeals.  Affirmed.

*J. A. Cunningham, Flowers & Brown,* and *C. L. Hester,* for appellant.

The only question presented for decision is whether or not the instrument sued on constitutes such claim against the Peoples Bank of Baldwyn, Mississippi, as entitles appellee to a guaranty certificate for the amount thereof.

Section 3596 of Hemingway's Code says what deposits and claims are subject to guarantee. The first sentence of this section is all it is necessary to consider. It is as follows: ''All deposits not otherwise secured and all cashier's checks, certified checks or sight exchange issued by banks operating under this law shall be guaranteed by this act.''

The claim of appellee was not one for a deposit and the instrument on which it was based is not a certified check. Is the instrument a cashier's check or sight exchange issued by the Peoples Bank? If it is not one or the other the claim of appellee thereon is not guaranteed. And we think it is neither. To us it appears to be a draft pure and simple, drawn by W. M. B. Cox, president, in favor of appellee on the Peoples Bank of Baldwyn, Mississippi. It was drawn on the draft form of the Bank of Tupelo. It is payable at sight. It provides for the payments of exchange. It is an order by Cox, president, on the Peoples Bank, Baldwyn, Mississippi, to pay appellee a certain sum of money with exchange. Section 4002 of the Code of 1906, section 2565 of Hemingway's Code, defines a bill of exchange or draft.

Cashier's checks are guaranteed because when a bank issues its cashier's check it receives an amount of money equal to the face of the check in exchange for it. The cashier's check is exchanged for the money. The bank issuing such check receives the benefit of the money received for it and it is right that the claim of the purchaser of the check should be guaranteed. His money goes into the bank as completely as if he had made a deposit therein. All banks issue cashier's checks. They have special blank forms, designated cashier's check, on which these are written. They are numbered in the order

of their issuance and registered in a record known as cashier's check register.  The money received for the cashier's check is held to retire it when it is presented for payment.

The one aim of the legislature in enacting the law providing for the guarantee of deposits was to guarantee the claims of depositors whose deposits were not otherwise secured and not bearing a greater rate of interest than four per cent. and the claims of persons based on instruments issued by banks for which they paid face value to the issuing bank.  The purpose of the act was to guarantee the claims of all persons who placed their money with the failed bank, either on deposit at not more than four per cent. interest, or in exchange for its paper. It must appear that the bank against which claim is made received the money of claimant before his claim is subject to guaranty.

The phrase "cashier's check" has no well-defined place in legal terminology but the popular significance of the term in banking circles is a bill of exchange drawn by a bank upon itself.  The Uniform Negotiable Instruments Law does not define or mention cashier's check and we do not find where our court has even discussed or defined it. See 5 R. C. L. 483; *Drinkall* v. *Movius State Bank,* 11 N. D. 10, 88 N. W. 724, 95 A. S. R. 693; 57 L. R. A. 341.

The instrument on which appellee's claim is based does not purport to be an order by the Peoples Bank of Baldwyn, Mississippi, upon itself.  It is not an order by W. M. B. Cox, President of the Peoples Bank, upon the Peoples Bank.  It is an order by W. M. B. Cox, President, upon the Peoples Bank.  There is nothing on the face of the instrument to indicate that it was intended as a cashier's check of the Peoples Bank.  It was not issued on the Peoples Bank of Baldwyn cashier's check form but on the draft form of the Bank of Tupelo.  It was not issued at the Peoples Bank but in a neighboring city.  The money obtained thereon did not go into the Peoples Bank.  The records of the Peoples Bank do not

show that the instrument was outstanding as an obligation of said bank. The bank examiners, in making an examination of the Peoples Bank, could not tell that it was outstanding as a claim against the guaranty fund of the state. It was not issued by the Peoples Bank or any of its authorized officers in due course of business. Cox was a criminal at the time, fleeing the country. He was acting in fraud of appellee and the Peoples Bank in uttering the instrument. And the theory on which a bank is held liable on one of its cashier's checks can have no application here because Cox could not have accepted the instrument on behalf of the Peoples Bank if it had been thereafter presented to it for payment, and not having authority to do this, he could not bind the Peoples Bank to an acceptance of the instrument by the act of issuance.

*John R. Anderson,* for appellee.

Appellant contends that the check in question is a draft and to sustain his contention cites section 2565 of Hemingway's Code. If the court will examine that section of the Code it will see that a draft is an order in writing signed by a person, or a body politic, his or its agent, directing the payment of a sum of money by "another person." Now this check in question is nothing more nor less than an order by the Peoples Bank of Baldwyn on itself to pay to the Bank of Tupelo the sum of five hundred dollars. It is not an order on anybody else or any other concern. Appellant's contentions seem to be that the fact that the check is signed by W. M. B Cox, president, makes it fall within the definition of a draft because it is a direction to someone other than Cox to pay the money. If appellant had gone a step further he would have found that the check in question was really a check by W. M. B. Cox, President of the Peoples Bank of Baldwyn directing the Peoples Bank of Baldwyn to pay to the Bank of Tupelo the sum of five hundred dollars.

It could not be a draft because it is signed by W. M. B. Cox, President of the Peoples Bank of Baldwyn, directed to the Peoples Bank of Baldwyn to pay the money in question to the Bank of Tupelo and the testimoney shows that Cox at that time was the legally authorized president of the Peoples Bank of Baldwyn and he had a right to issue such checks and the money was for the use of the Bank. If it had been signed by W. M. B. Cox and the word president had been left out and had been directed to the Peoples Bank of Baldwyn it would have been a draft.

The definition of a cashier's check in 5 Ruling Case Law, 483, as cited by appellant in his brief is entirely correct. It is merely an order by the bank upon itself to pay a certain sum of money to a designated party. The check in question is an order upon the Peoples Bank of Baldwyn signed by W. M. B. Cox, President of that bank, to pay to the Bank of Tupelo the amount of money in question.

Appellant's contention seems to be that the fact that Cox did not sign the name ''Peoples Bank of Baldwyn'' to the check in question instead of W. M. B. Cox, President, makes this a draft instead of a cashier's check. I cannot see why the appellant arrives at this conclusion. Suppose Cox had signed the name ''Peoples Bank of Baldwyn'' to this check. Would that have made it any more a cashier's check than it was when signed by W. M. B. Cox, President? Cox was the duly authorized president of the bank at the time the paper was executed; he represented to the Bank of Tupelo that this money was for the Peoples Bank of Baldwyn; the money was paid to him for the Peoples Bank of Baldwyn and the issuance of it amounted to an acceptance. According to appellant's contention if it had been signed ''The Peoples Bank of Baldwyn'' it would have been a cashier's check. The court knows that practically every cashier's check that is issued is signed by the cashier or some officer duly authorized to sign the same and it is on very rare oc-

casions that the bank's name is placed on the check at the bottom as appellant contends must be done. There is a reason for it because the public wants to know and has a right to know by whom and by what authority a cashier's check is issued, and unless the cashier or some duly authorized agent of the bank signs his name to the check there would be no way of ascertaining from the check itself whether it was authorized by the bank upon which it is drawn.

We know of no law requiring a cashier's check to be drawn on any form. The question of the form, the paper, the color of the ink or the pencil does not add to or take away from the nature of this check or any other check.

Appellant says that this check was not issued by the Peoples Bank or any of its authorized officers in the due course of business. The bank was open for business at the time this check was issued; Cox was its president; he was acting as such and on behalf of the Peoples Bank when this check was given so far as appellee knew; and the testimony shows that it was the custom of the Peoples Bank to get money for use in its business on just such checks as this in question. Therefore, we say that this check was a cashier's check issued by the duly authorized agent of the appellant and in the due course of its business and therefore, it is guaranteed under the guaranty law of Mississippi.

SYKES, P. J., delivered the opinion of the court.

This cause presents an appeal from a decree of the chancery court of Lee county ordering the appellants, as agents of the banking department of the state of Mississippi, to issue appellee a certificate of indebtedness on its guaranty fund for the sum of five hundred dollars with interest.

The facts upon which this decree was entered are undisputed, and are as follows: On December 20, 1922,

W. M. B. Cox, president of the People's Bank of Baldwyn, Miss., presented to the cashier of the Bank of Tupelo for payment an instrument of writing, a copy of which is here set out in full, Cox stating at the time that he needed some money for the operation of his bank and wanted to get five hundred dollars. The Bank of Tupelo honored the instrument, which is as follows:

"85-127.   The Bank of Tupelo.

"Tupelo, Miss., Dec. 20, 1922.

"At sight pay to the order of the Bank of Tupelo $500 five hundred and no/100 dollars, with exchange.

"W. M. B. Cox, Pres.

"To People's Bank, Baldwyn, Miss."

It seems that Cox at this time was on his way to parts unknown after having wrecked the People's Bank of Baldwyn.

The first part of section 3596, Hemingway's Code, reads as follows:

"All deposits not otherwise secured and all cashier's checks, certified checks or sight exchange issued by banks operating under this law shall be guaranteed by this act."

The narrow question here presented is whether or not under this law this instrument is a cashier's check. It is contended by the appellant that it is not; but is a draft drawn on the Bank of Baldwyn by Cox; that the word "president" does not necessarily mean that he was president of the People's Bank of Baldwyn, and that it cannot be said that this instrument was drawn on this bank by one of its agents, but rather is an order to the Tupelo Bank by a third party, presumably a depositor, drawn on the People's Bank of Baldwyn. It is also suggested by the appellant that a cashier's check is usually issued on a form gotten out by the bank issuing it, whereas this instrument is written on a form of the Tupelo Bank.

A cashier's check is merely a bill of exchange, drawn by a bank upon itself, and accepted by the act of issuance. 5 R. C. L., p. 483; *Drinkall* v. *Bank,* 11 N. D. 10, 88 N. W.

724, 57 L. R. A. 341, 95 Am. St. Rep. 693. The instrument in question comes within this definition of a cashier's check. It is drawn on the Baldwyn Bank by the president of that bank. It was unnecessary in this case for the word "president" to be followed by "People's Bank, Baldwyn, Miss." It was known to the officers of the Tupelo Bank, and generally known, that Cox was president of this Baldwyn Bank. His signing the cashier's check as president could not have meant anything except that he was president of the bank upon which the paper was drawn.

The decree of the court below is affirmed.

*Affirmed.*